## SUMMONS IN DIVORCE CASES.

Common Pleas Court of Cuyahoga County.

### MARY R. MILLIS v. JOHN MILLIS.

Decided, November 2, 1914.

*Divorce and Alimony—Defendant Out of the State by Compulsion— Must be Served as a Resident of the State—Strict Construction of the Statute Required—Faulty Affidavit for Service by Publication—Residence and Abode.*

1. Extreme cruelty and gross neglect of duty are separate and distinct grounds for divorce, and where acts are complained of which might constitute extreme cruelty under some circumstances and gross neglect of duty under other circumstances, good pleading requires that it be stated on which ground a divorce is asked.

2. Where an affidavit for publication goes beyond the requirement of the statute "that service of summons can not be made within the state upon the defendant sought to be served," and undertakes to give the reason why service can not be made within the state, and the reason given is that the defendant resides on a certain street of a city in another state, it does not necessarily follow that the affidavit conforms with the requirements of the statute, inasmuch as the reason given is not conclusive that service can not be had upon him in this state.

3. Place of residence is a matter of choice, and where an army officer has indicated his choice by purchasing property within the state and establishing his home therein which he continues to maintain, he can not be served by publication, notwithstanding his abode is by compulsion at some army post in another state or country where he has been stationed by the Government.

*Geier, Farrell & Edwards,* for plaintiff.
*Henry & McGraw,* contra.

FORAN, J.

The plaintiff, Mary R. Millis, on November 22, 1913, filed a petition in the court of common pleas of this county praying for divorce against the defendant, John Millis. The usual precipe was attached to the petition, and the return of the sheriff made December 1, 1913, and a subsequent return on an alias precipe made April 27, 1914, read, "The within named defendant, John Millis, not found in my county." On April 12, 1914, the plaintiff filed an affidavit for publication which reads as follows, omitting the caption and jurat:

"Mary R. Millis, being first duly sworn, says that she is the plaintiff in the above entitled action; that service of summons can not be made upon the defendant in the state of Ohio, for the reason that the defendant resides at 284 Thomas street, Newport, Rhode Island, and that it is one of those cases provided for in Section 11984 and 11292 of the General Code."

The proof of publication was filed September 16, 1914, and seems to be in legal form.

On September 3, 1914, the defendant filed a motion to quash, set aside, and hold for naught, the writ of service of summons by publication, the defendant only appearing for the purposes of the motion, the motion averring that the defendant is and at all times since the commencement of the action has been a resident of Cuyahoga county. In the affidavit in support of the motion to quash, defendant says that he is and has been for many years past a Colonel of Engineers in the United States Army; that he was formerly stationed in the city of Cleveland, Cuyahoga county, Ohio, but was subsequently transferred by order of the War Department to Newport, Rhode Island, where he is now in charge of the United States Engineers' office of that city. Affiant says that during the past eight or ten months he has been in Cleveland, Ohio, several times on duty as a member of the United States Engineering Board, and expects to be in Cleveland from time to time hereafter in the same behalf; and further says that while he was officially stationed in Cleveland, Ohio, he purchased a house and lot in East Cleveland, Cuyahoga county, Ohio, and there dwelt with his family continuously while he was so stationed in Cleveland, and that said house in East Cleveland,

Cuyahoga county, Ohio, is his home, and that the same has at no time been rented or occupied for any other purpose than that of his family residence; that said premises are in charge of a care-taker, and all of the defendant's books, furniture, and household effects are still in said house; that the only effects he has taken from said house are his necessary wearing apparel, and that when he was in Cleveland he regularly remained and slept in said house, with the exception of a few nights when, on account of early departure from the city, it was more convenient to stop at a hotel; that said home in East Cleveland, Ohio, has never been offered for sale or rent, but was ready for occupancy by the defendant and the members of his family, including the plaintiff, whenever any of them may have desired to occupy it; that his present official station is at Newport, Rhode Island, and that he is so stationed at said Newport by assignment regularly made by the War Department, and that such assignment is temporary and may be changed at any moment; that while discharging his duties at Newport, Rhode Island, he has occupied rooms there by the month, and takes his meals at a neighboring boarding house; that he has furnished no establishment that could in any way be called or considered a permanent residence at Newport, Rhode Island; and that he regards Cuyahoga county, Ohio, as his permanent home and place of residence.

The question presented for the consideration of the court is, whether under the circumstances the motion to quash ought to be granted. Elaborate briefs have been filed upon both sides, and much learning and ingenuity have been displayed as to what is meant by the word domicile or residence. The question is decidedly novel and new, and has never been decided so far as the court is able to learn. We think it would be a waste of time to attempt to distinguish the cases cited by learned counsel, and deem it necessary only to consider the matter in a broad and general way. It may be said *in limine* that, in this county at least, great laxity has arisen with respect not only to divorce petitions, but with respect to service upon defendants. One of the rules of this court provides as follows:

"The judges shall carefully examine all petitions and cross-petitions brought before them in divorce cases, and determine whether a cause of action is stated therein."

Acting upon this rule, the court has examined the petition of the plaintiff, and is clearly of the opinion that it does not state a cause of action.

Section 11979, General Code, enumerates ten distinct causes for which divorce or alimony may be granted. Among these are "extreme cruelty, or any gross neglect of duty," but these are two separate and distinct causes for divorce, and ought not to be confounded with each other.

In the petition set out *in extenso,* are many acts of conduct on the part of the defendant, of which the plaintiff complains. These acts of conduct might, under certain circumstances, amount to a gross neglect of duty, or they might amount to extreme cruelty, but the pleader does not state upon which ground the plaintiff is seeking a divorce, nor is the defendant notified whether plaintiff seeks a divorce because of extreme cruelty, or because of gross neglect of duty. In this respect the petition does not fulfill the requirements of a good pleading.

Section 11293, General Code, provides:

"Before service by publication can be made, an affidavit must be filed that service of summons can not be made within this state on the defendant sought to be served, and that the case is one of those mentioned in the next preceding section."

Section 11984 provides:

"If the defendant is not a resident of this state, or his residence is unknown, notice of the pendency of the action must be given by publication as in other cases."

It will be noticed that in the affidavit for publication it is claimed that, "Service of summons can not be made upon the defendant within the state of Ohio, for the reason that the defendant resides at 284 Thomas street, Newport, Rhode Island." If the affidavit simply followed the statute, "that service of summons can not be made within this state upon the defendant sought to be served," no objection could be found to the form of the affidavit; but when the affidavit undertakes to give the reason why service can not be made within the state of Ohio, and the reason is stated as being that the defendant resides at 284

Thomas street, Newport, Rhode Island, it does not necessarily follow that the affidavit conforms with the requirements of the statute. The mere fact that the defendant resides at 284 Thomas street, Newport, Rhode Island, is not conclusive that service may not be had upon him in the state of Ohio, and this becomes quite evident from the affidavit of the defendant that he is frequently in the city of Cleveland, Ohio, where service may be had upon him. We therefore hold that the affidavit is insufficient, and the service ought to be quashed for that reason if for no other.

But the main objection made by the defendant to the service is that his legal residence is now in Cuyahoga county, Ohio, and that he has no legal residence in Rhode Island.

There are many reasons why the statute relating to divorce should be strictly construed. Even under those conditions where marriage has been deemed to be the acquisition by the husband of property in the wife, or in jurisdictions where it has been regarded as a mere agreement between persons capable of entering into and dissolving the marriage contract, it is frequently found that marriage has been held dissoluble at the will of the husband, or by agreement between the parties; but it must be conceded that even in these cases, or under these circumstances, the interest of the whole community, that is, of the state, in the purity of the marriage relation, as well as in the pecuniary bearing of this particular kind of contract on the condition or status of the children, the well-being of society requires the imposition of restrictions and the attachment of conditions to the termination of the obligation consequent on a marriage legally contracted.

A history of the family relation upon this question might be illuminating, but we only need refer to one particular phase of that history. Exogamy, or the unwritten law which makes it incest, and which made it formerly in some jurisdictions a capital offense, to marry within certain degrees of kinship, is one of the indications pointing to the evolution of the family as it existed in savage communities to the present day. Exogamy itself existed among the savage people. The purity of the race demanded it. The evils of promiscuous intercourse could not forever escape human observation. The exogamous survived, while

the promiscuous perished.  This is only one of the many ramifications historically considered that enter into the marriage relation, and experience has demonstrated that today the family is the social human integer and the best interests of society demand that family ties be not terminated or dissolved for trivial reasons or causes.  Although we are consciously impressed with the idea that the family originates in marriage, it is nevertheless unquestionably true, as anthropologists have pointed out, that marriage is rooted in the family.  It is also true that the more complete the harmony and community of life between husband and wife, the larger the value to society of the family in its separate units and as a complete whole.  The evolution of the family is the evolution of society, and the monogamous marriage marks the highest stage and phase in this evolution from the physical or unregulated sex relationship to the era of the husband's proprietary interest in his wife or wives, through polygamy, concubinage, and polyandry, and the final or monogamous stage, where the relation of husband and wife approximates that of two persons wholly and entirely equal before the law.  While it may be said that marriage is a civil contract, jurists have always, and of social necessity must recognize its isolation from all other kinds of contracts, and deal with it really as a legal status between the husband and the wife.  In contracts generally, the parties may of right define their rights and duties as they please; that is, parties may contract in any way they see fit so long as their contracts are not in contravention of law or public policy.  In marriages, however, every resulting right and duty is absolutely fixed by the laws of the state, and these laws are strictly construed in favor of the indissolubility and integrity of the contractual relation known as the marriage contract.

The case of *Harter* v *.Harter*, 5 O., 318, is a case in point.  In that case one of the parties lived in Delaware county, and the other in Perry county in this state.  The petition was filed in Delaware county and summons was issued directed to the sheriff of Perry county, which was by him duly served upon the defendant and returned, but the law at that time provided or required that in all cases where the application is made for divorce and

the party defending resides in the county where application is made, personal service shall be made by summons and by a copy of the petition, but in case the defendant does not reside in the county, then publication shall be given in one of the newspapers in the state for three months. This is practically the second section of the act concerning divorce and alimony passed January 7, 1824 (29 O. L., 431). A divorce was granted in the case, but the Supreme Court reversed the finding of the lower court, and Hitchcock, J., among other things said:

"We have ever been disposed to give a strict construction to the law, and not to hear a case unless the applicant brings him or herself within both the letter and spirit of the statute."

In *Lewis* v. *Lewis*, 1 Iddings T. R. D., 11, it was held that:

"Service in a divorce case by voluntarily entering appearance by the defendant is not good. Such service is collusive upon its face, and against public policy. The manner of service pointed out by the statute must be followed."

In *Smith* v. *Smith*, Wright's Reports, 643, it was held:

"When a bill for divorce is amended, there must be service. The appearance and waiver will not be received."

In other words, a party may not bring an action for divorce, say, for gross neglect of duty, and then amend the petition and claim a divorce without service on the ground of extreme cruelty or any other statutory ground; and if such amendment is made, service must be had upon the petition as amended.

We think these citations sufficient to show what the trend of opinion has been in Ohio. As has been already indicated, we do not believe that any good purpose would be served by attempting to distinguish or analyze the various cases cited by counsel. It may be said in a general way that the law of the United States, as well as of England, requires that a man shall always have a domicile, and that he shall never have more than one domicile.

In *Udny* v. *Udny*, 1 House of Lords, Scottish Appeals, it was said:

"A settled principle is, that no man shall be without a domicile; and to secure this end, the law attributes to every individ-

ual as soon as he is born, the domicile of his father if the child be legitimate, and the domicile of the mother if the child be illegitimate.''

This is called the domicile of origin, and, of course, is involuntary. It is the creation of law and not of the party; in other words, it fixes the status of each individual, and determines his nationalty. There is, however, a domicile of choice which is the creation of the party; and when such domicile of choice is created, the domicile of origin is in abeyance, but is not absolutely extinguished or obliterated; and if the domicile of choice, in the case of a single man, be terminated, the domicile of origin may be revived. Intention is a necessary element in domicile of choice; indeed it is the element that must prevail in determining whether a domicile is one of choice or not. Abode has generally been held, and is now understood to be the place where a man lives with his family and sleeps at night. See *R.* v. *Hammon,* 17 Q. B., 772.

Residence, in the ordinary meaning of the term, is the place where an individual eats, drinks and sleeps, or where his family or his servants eat, drink and sleep. See *R.* v. *North Curry,* 4 B. & C., 959.

If a man's place of residence is not where he eats, drinks, and sleeps with his family, we think it must be said that the place where he then abides is not his legal residence, but his abode for the time being, and his residence must be said to be where his servants eat, drink, and sleep, or where his family eats, drinks and sleeps. We are clearly of the opinion that under the divorce statutes, where the question of residence is involved and service can not be had within the state of Ohio, it means that the party has separated from his family or from the spouse, and that this separation is one of choice. In other words, if a man separates from his wife and family and leaves the state, he does so voluntarily, and under such circumstances service may be had upon him by publication as in other cases. It is very pertinently said by counsel for defendant in this case that if the defendant, Colonel Millis, was ordered on duty to the Philippine Islands by the Government of the United States, it would be manifestly

unjust and clearly illegal to permit the wife to obtain a divorce from him while his abode was in the Philippine Islands, he being there upon duty and not there from choice. Or, take another instance; suppose a man is sent as consul by the United States to Hong Kong, China, or some other distant city, and does not find it convenient to take his family with him, can it be said that while he is at his post on duty that his wife may bring an action for divorce and obtain service by publication for the reason that service by summons can not be had upon him in the state of Ohio? Or the illustration might be carried even further. A man may be in the contracting business, and while his main office and principal place of business may be in Cleveland, Ohio, he may have a contract to do work in Seattle or San Francisco, and the duties incident to this contract may require his presence there continuously for a year or more. Under such circumstances can it be said that the wife may file a petition for divorce and obtain service by publication simply because service by summons could not be served upon the defendant in Ohio? In the cases indicated it might not be convenient, indeed it might be impossible, even if the summons and a copy of the petition were served upon the defendant, to return to his home to make his defense. This is especially true with respect to a United States Army officer. He would have to obtain leave of absence, which is not always granted for the asking, and if a United States Army officer was in a far distant country and a state of war existed, a leave of absence would not be granted under these circumstances, and the same might be said with respect to a consul who was several thousand miles from home. The situation might be such that the government could not grant a leave of absence at the time even if one was asked; or even in the case of a man doing contract work in a distant part of the country, the work might be in such condition at the time he received a copy of the summons that to then leave it would spell ruin and destruction for him.

We think the answer to these questions is conclusive upon this proposition, and we therefore unhesitatingly hold that the legal residence of the defendant, Colonel Millis, is now in Cuyahoga county, Ohio, and that his abode in Newport, Rhode Island,

is not one of choice but is forced upon him by the exigencies of his profession, and it was never contemplated by the Legislature of the state that service in a divorce petition could be had upon him, under these circumstances, by publication.

It may be true that if the plaintiff, Mary R. Millis, really has good grounds for divorce, or good cause for her action, it would be a hardship to say that she could not have service by publication, as the temptation on the part of the defendant to keep out of Ohio might be so great as to prevent him from ever returning to his home, but the trouble is with the Legislature. In other words, the Legislature of the state of Ohio has not provided for service in a case of this kind, and the interest of the state in the integrity of the family relation, the property and pecuniary interests of children are of such moment that it must be held that the law relating to service in divorce cases must of necessity be strictly construed, and the party seeking a divorce must, as Judge Hitchcock said, "bring him or herself within both the letter and the spirit of the statute."

For these reasons the motion will be granted, and the service quashed.